# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HEALTHCARE SERVICES GROUP, INC., <br>     **Plaintiff,** <br><br> v. <br><br> MILCIADES MORETA, and <br> SERENE HEALTH SERVICES LLC, <br>     **Defendants.** | CIVIL ACTION <br><br><br><br> NO. 19-2260 |

DuBois, J.                                                                               November 15, 2019

# **M E M O R A N D U M**

## I. INTRODUCTION

This case arises out of the alleged violation of a non-compete provision in an employment contract. Defendant Milciades Moreta worked for plaintiff Healthcare Services Group, Inc. ("HCSG") for approximately one year as a Housekeeping Account Manager at the Brigham Health and Rehabilitation Center in Newburyport, Massachusetts, before resigning to join defendant Serene Health Services LLC in a similar role at the same medical facility. Presently before the Court is Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. [sic] 12(b)(2) or, in the Alternative, Motion to Transfer Venue. For the reasons set forth below, the Court denies the motion.

## II. BACKGROUND

On April 3, 2018 defendant Milciades Moreta was hired as a Housekeeping Account Manager by HCSG. Compl. ¶ 18. HCSG, a contractor that provides services related to "housekeeping, laundry, environmental, and dining/nutrition to long-term care and acute-care health care facilities," assigned Moreta to work at Brigham Health. Compl. ¶¶ 2, 8. During his tenure as an Account Manager, Moreta signed two restrictive covenants [sic] agreements

("RCAs") with HCSG: the first upon his initial hiring; the second in exchange for an increase in bi-weekly pay, from $1,200 to $1,300, on August 20, 2018.  Compl. Ex. B ("Moreta RCAs"). Each RCA prevented the employee from accepting "employment related to housekeeping, laundry, linen, and/or food services by any facility [or at any facility] in which Employee has worked, or been directly responsible for," for two years after leaving HCSG.  Compl. ¶¶ 20–21; Moreta RCAs ¶¶ 6–7.

On April 3, 2019, the contract between HCSG and Brigham Health ended, and Serene, a competitor of HCSG, became the new housekeeping contractor for Brigham Health.  Compl. ¶¶ 29–30.  Because its contract with Brigham Health ended, HCSG offered Moreta an Account Manager position and increased pay at another facility that HCSG served, but Moreta declined on the ground that the new facility was unfamiliar and too far from his home.  *Id.* ¶¶ 32–33; Defs.' Mot. Dismiss 4.  Soon thereafter, Moreta accepted a position similar to that of Account Manager with Serene, overseeing housekeeping services at Brigham Health.  *Id.* ¶¶ 32–33.  This move to Serene, plaintiff alleges, violated the non-compete provision of the RCAs.

Importantly, the RCAs contain a forum selection clause that provides that Moreta consents to personal jurisdiction in Pennsylvania courts.[1]  Moreta RCAs ¶ 8.B.  The RCAs also include a choice-of-law provision designating Pennsylvania law.  *Id.* ¶ 14.

On May 16, 2019 plaintiff filed a Complaint in the Court of Common Pleas of Bucks

---

[1] The forum selection clause provides:
> In the event that the Company seeks to enforce any of the terms of this Agreement, Employee agrees that any legal proceeding may, at the sole discretion of the Company, be instituted in the Court of Common Pleas, Bucks County, Pennsylvania, or in the United States District Court for the Eastern District of Pennsylvania, irrespective of the fact that either of the parties now is, or may become, a resident of a different state.  Employee irrevocably consents to the jurisdiction of each of those courts and agrees that service of the Complaint or other process may be made as provided in the applicable Rules of Court.

County, asserting claims for the following: breach of contract against Moreta (Count II);[2] tortious interference with contractual relations against Serene (Count III); and an injunction prohibiting Moreta from working as an employee for Serene at Brigham Health and prohibiting Serene from employing Moreta at Brigham Health (Count IV). Compl. ¶¶ 48–70.

Defendants filed a Notice of Removal in this Court on May 23, 2019 (Document No. 1). Defendants then filed a Motion to Dismiss Pursuant to Fed. R. Civ. [sic] 12(b)(2) or, in the Alternative, Motion to Transfer Venue (Document No. 8, filed June 6, 2019). The motion is fully briefed and ripe for decision.[3]

### III. LEGAL STANDARD

#### A. Personal Jurisdiction

"A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Pennsylvania's long-arm statute provides for personal jurisdiction to the fullest extent allowed under the Constitution's due process clause. 42 Pa. C.S. § 5322. Courts reviewing a motion to dismiss for lack of personal jurisdiction "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

There are two types of personal jurisdiction over a defendant: general and specific. General jurisdiction exists where the defendant has contacts with the forum state that "are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State."

---

[2] On August 19, 2019 plaintiff dismissed Count I of the Complaint in which it asserted a similar claim against Jorge Santiago, a former HCSG employee who now works for Serene (Document No. 21).
[3] Also pending is Plaintiff's Emergency Motion for Preliminary Injunction and Expedited Discovery (Document No. 5, docketed on May 23, 2019). In an Order filed on June 12, 2019, the Court stated that it would defer ruling on this motion until it ruled on defendants' motion to dismiss, or in the alternative, transfer (Document No. 11).

3

*Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted)). General jurisdiction does not require the underlying cause of action to be related to defendant's activities in the state. *Goodyear*, 564 U.S. at 919.

In contrast, specific jurisdiction "depends on an affiliation between the forum and the underlying controversy" and is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (citations omitted). To establish specific jurisdiction, plaintiff must satisfy three requirements. Plaintiff must show that (1) the defendant "purposefully directed [its] activities at the forum"; (2) the litigation arises out of or relates to at least one of those activities; and (3) once the first two requirements are satisfied, the court may exercise jurisdiction if doing so would comport with traditional notions of "fair play and substantial justice." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (internal quotation marks omitted).

These requirements for personal jurisdiction may also be waived by the parties. "[L]itigants can give 'express or implied consent to the personal jurisdiction of the court' through a 'variety of legal arrangements,' including forum selection clauses in contracts executed by the parties." *Skold v. Galderma Labs., L.P.,* 99 F. Supp. 3d 585 (E.D. Pa. 2015) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)).

### B. Transfer

28 U.S.C. § 1404(a) provides that a federal district court may transfer a case when three conditions are met: (1) the civil action could have been properly brought initially in the proposed transferee federal court; (2) transfer will be more convenient for both the parties and the witnesses; and (3) the transfer will be in the "interest of justice." *See Jumara v. State Farm Ins.*

*Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

Although "[t]he decision to transfer is in the court's discretion, . . . a transfer is not to be liberally granted" under § 1404(a). *Shutte*, 431 F.2d at 25 (quoting *Handlos v. Litton Indus., Inc.*, 304 F. Supp. 347, 352 (E.D. Wis. 1969)); *see Jumara*, 55 F.3d at 879 (holding that a plaintiff's choice of venue "should not be lightly disturbed"). Accordingly, once a court considering transfer determines that a case could have been properly filed in another district, the court must evaluate "all relevant factors," including "the private and public interests protected by the language of § 1404(a)." *Jumara*, 55 F.3d at 879. Ultimately, the party moving to transfer bears the burden to demonstrate that transfer is appropriate. *Id.* at 879.

In cases where the plaintiff and defendant are bound by an enforceable forum selection clause, the Court's calculus under the § 1404(a) inquiry changes. *See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013). Under these circumstances, courts "deem the private-interest factors to weigh entirely in favor of the preselected forum" and only consider whether the public interest factors "overwhelmingly" favor transfer, because the plaintiff and defendant have already privately agreed to a forum. *Id.* at 64, 67. However, in cases where some defendants are bound by the forum selection clause and others are not, the Third Circuit applies a further-modified § 1404(a) transfer analysis, which is analyzed at *infra* p. 13. *See In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 403 (3d Cir. 2017).

IV. **DISCUSSION**

Defendants argue that this case should be dismissed because the Court lacks personal jurisdiction over both defendants. Alternatively, defendants contend that the case should be transferred to the District of Massachusetts for the convenience of the parties. The Court rejects

5

both arguments. Moreta and Serene each consented to the Court's personal jurisdiction and transfer is not warranted under § 1404(a).

### A. Personal Jurisdiction Exists Over Both Moreta and Serene

#### 1. *Moreta*

A party may consent to personal jurisdiction by signing a contract that contains a forum selection clause. *Compagnie des Bauxites de Guinee*, 456 U.S. at 703–04. Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Enforcement is unreasonable when the moving party "establishes (1) that [the provision] is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Coastal Steel Corp v. Tilgman Wheelabrator, Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983). The Supreme Court in *M/S Bremen* held that the moving party must make a "strong showing" that a forum selection clause is unreasonable under the circumstances. 407 U.S. at 15.

Moreta argues that enforcement of the RCA forum selection clause would be unreasonable because the provision was obtained by fraud or overreach, and enforcement would be unreasonably inconvenient. The Court rejects these arguments, noting that my colleague, Judge Slomsky, in a similar case between HCSG and several former Account Managers, recently found that HCSG's RCA forum selection clause was valid and enforceable. *See Healthcare Servs. Grp., Inc. v. Skyline Servs. Grp.*, No. CV 17-2703, 2018 WL 637773, at *4 (E.D. Pa. Jan. 30, 2018). The Court next turns to Moreta's arguments.

First, Moreta claims that he did not sign either RCA and that his signature on each

contract was forged. "[A] party who relies on fraud or forgery has the burden in the first instance of proving the facts upon which the alleged fraud or forgery is based, and these facts must be established by evidence that is clear, direct, precise, and convincing." *CoActiv Capital Partners, Inc. v. Feathers*, No. CIV A 08-5506, 2009 WL 1911673, at *3 (E.D. Pa. July 1, 2009) (quoting *Carlson v. Sherwood*, 206 A.2d 19, 20 (1965) (internal quotation marks omitted)). "Neither a 'bald allegation of forgery' nor 'testimony that [one] cannot remember signing [a document], nor the combination of both' constitutes clear and convincing evidence of forgery." *Id.* (quoting *Jackson v. Allstate Ins. Co.*, 441 F. Supp. 2d 728, 734 (E.D. Pa. 2006)). In *CoActiv Capital Partners*, much like this case, the defendant challenged the validity of a forum selection clause designating Pennsylvania courts on the ground that he had never signed the contract and that his signature had been forged. *Id.* Although the defendant provided an affidavit stating that he had not signed the subject contract and did not recall being given a copy of the contract, the court held that this affidavit alone was insufficient. *Id.* at *4.

Moreta's allegations of forgery in this case are no stronger than that of the defendant in *CoActiv Capital Partners*. In a signed declaration, Moreta states that the signatures on the two RCAs "are not my signatures. I did not sign either of those Restrictive Covenants Agreements." Defs.' Mot. Dismiss Ex. B ("Moreta Decl.") ¶ 4. Defendants also analyze the signatures on both RCAs and argue that they "contain multiple indices that they were duplicated," noting that the height, shape, and location of each letter appear to be identical in the two documents. Defs.' Reply Br. 4. In response, plaintiff provides the declaration of an HCSG District Manager who states that he hired Moreta and witnessed Moreta sign both RCAs. Pl.'s Opp. Ex. 4 ("Mendes-Pereira Decl.") ¶¶ 4, 7. Based on this record alone, Moreta's allegation that he did not sign the RCAs does not meet the "strong showing" standard needed to overcome the presumed validity of

7

the forum selection clause.⁴  *See M/S Bremen*, 407 U.S. at 15.

Second, Moreta claims that even if he did sign the RCAs, the forum selection clause is not enforceable because it was procured by overreach.  "Overreach exists when there is (1) overwhelming bargaining power or influence over the other party, and (2) the exploitation of that power to induce assent."  *Adhesives Research, Inc. v. Newsom*, No. 1:15-CV-0326, 2015 WL 1638557 (M.D. Pa. April 13, 2015) (citing *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 21 (1st Cir. 2009)).  Courts generally apply forum selection clauses in employment contracts, even when the employer and employee did not actually negotiate the clause, so long as the "contract was executed while the employee still had an opportunity to choose not to enter in the contractual relationship."  *Kahn v. American Heritage Life Ins. Co.*, No. CIV.A. 06-0183, 22006 WL 1879192 (E.D. Pa. June 29, 2006) (citing *Barbuto v. Med. Shoppe Int'l, Inc.* 166 F. Supp. 2d 341, 346–47 (W.D. Pa. 2001)); *see also BABN Technologies Corp. v. Bruno*, 25 F. Supp. 2d 593 (E.D. Pa. 1998).  Merely feeling pressure to sign an employment contract, including a contract for a promotion, is insufficient to constitute overreach.  *See Depuy Synthes, Inc. v. Edwards*, 23 F. Supp. 3d 472, 478 (E.D. Pa. 2014).  Rather, a defendant who signed a contract for a promotion must make a strong showing that, for example, he would have lost his prior job if he had not signed the contract, or that he knew of other employees who had lost their jobs because they had not pursued promotions.  *See id.* at 479.

Moreta has failed to make such a showing in this case.  Although HCSG, a national corporation, had greater bargaining power than Moreta, Moreta still chose to agree to the RCA forum selection clause on two separate occasions.  Other than stating that Moreta was a "low-level, low-wage employee" and unsophisticated contractual party, defendants have not

---

⁴ This holding does not prevent defendants from continuing to pursue a forgery defense by offering additional proof, either in a motion for summary judgment or at trial.  *See CoActiv Capital Partners*, 2009 WL 1911673, at *13 n.6.

8

demonstrated that plaintiff actually exploited its greater bargaining power.  *See* Defs.' Mot. Dismiss 7.  Accordingly, the Court does not find overreach.

Third, Moreta argues that given his income, family care responsibilities, and non-executive-level position, it would be "manifestly unreasonable" to enforce the forum selection clause and require that he litigate in this Court.  Defs.' Mot. Dismiss 8.  For a court to find enforcement of a forum selection clause unreasonable, a defendant must "show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court."  *M/S Bremen*, 407 U.S. at 18; *see Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991).  However, courts consistently reject arguments that the additional travel time and cost of litigation in a foreign state render enforcement of a forum selection clause unreasonable, particularly when the forum selection clause is clearly stated in the contract.  *See, e.g.*, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 592 (1991); *Fuller Co. v. RDM Tech. BV*, No. CIV A 99-CV-1684, 1999 WL 961217, at *3 (E.D. Pa. Oct. 15, 1999) (finding that an inconvenience that "was foreseeable at the time of the . . . agreement . . . does not, standing alone, render this Court's exercise of jurisdiction unreasonable").

Defendants argue that the Court should consider the fact that Moreta is a low-level, low-wage service industry employee when determining whether, under *M/S Bremen*, enforcing the forum selection clause would deprive him of his day in court.  407 U.S. at 18.  Significantly, defendants cite no authority for this proposition.  The Court has also found no cases in which a forum selection clause was deemed unreasonable or unduly inconvenient on the ground that defendant was a low-level employee.

The Court concludes the RCA forum selection clause is valid and enforceable.  By

signing two contracts with a forum selection clause designating Pennsylvania as the forum for litigation, defendant Moreta has consented to the Court's jurisdiction.

2. *Serene*

Serene, a Connecticut LLC that maintains its principal place of business in Connecticut, is registered to do business in Pennsylvania, as required by the state's registration statute, 15 Pa. C.S. § 411. Pennsylvania's jurisdictional statute provides, *inter alia*, that registration as a foreign corporation in the state and "[c]onsent, to the extent authorized by the consent" both individually "constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such" entities. 42 Pa. C.S. §§ 5301(a)(2)(i)-(ii). Given this statutory language, the Third Circuit has held that, by registering in Pennsylvania, a foreign business consents to general jurisdiction by Pennsylvania courts. *Bane v. Netlink, Inc.*, 925 F.2d 637, 640–41 (3d Cir. 1991).

Serene argues that the Third Circuit precedent in *Bane* is no longer controlling precedent in light of the narrowing of general jurisdiction by the Supreme Court in *Daimler*. In *Daimler*, the Supreme Court held that that a court may exercise general jurisdiction over a business only in a forum where the business is "fairly regarded as at home." 571 U.S. at 137 (quoting *Goodyear*, 564 U.S. at 924). The Supreme Court clarified that, notwithstanding "exceptional cases," the paradigmatic places where a business is "at home" are its place of incorporation and its principal place of business. *Id.* at 137, 139 n.19.

This Court concludes that *Daimler* does not disrupt the central conclusion of *Bane*: that registration "carries with it consent to be sued in Pennsylvania courts." 925 F.2d at 640–41. *See, e.g.*, *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, 16-cv-665, 2017 WL 3129147, at *11 (E.D. Pa. July 24, 2017) (holding that *Daimler* did not "address[] the interplay

between consent to jurisdiction and the due process limits of general jurisdiction"). In fact, the *Bane* court noted that, in recognizing general personal jurisdiction by registration, it "need not decide whether authorization to do business in Pennsylvania is a 'continuous and systematic' contact with the Commonwealth for purposes of the dichotomy between 'general' and 'specific' jurisdiction." 925 F.2d at 640. Accordingly, this Court, like many other Pennsylvania district courts following *Daimler*,[5] concludes that registration remains a sufficient basis for personal jurisdiction under current Third Circuit law. Thus, the Court may exercise general personal jurisdiction over Serene.

## B. Transfer to the District of Massachusetts Is Not Warranted

The Court also denies defendants' motion to transfer this case to the District of Massachusetts under § 1404(a). Section 1404(a) presents the Court with two questions: (1) whether plaintiff could have brought this case in the District of Massachusetts and (2) whether the relevant private and public interest factors favor transfer. The Court addresses each of these questions in turn.

"A district is one in which an action 'might have been brought' if that district has (1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a

---

[5] *See Williams v. Takeda Pharmaceuticals America, Inc.*, 2019 WL 2615947 (E.D. Pa. June 26, 2019); *Youse v. Johnson & Johnson*, 18-cv-3578, 2019 WL 233884 (E.D. Pa. Jan. 16, 2019); *Gorton v. Air & Liquid Sys. Corp.*, 303 F. Supp. 3d 278, 296–97 (M.D. Pa. 2018); *Aetna Inc. v. Mednax, Inc.*, No. CV 18-2217, 2018 WL 5264310, at *5 (E.D. Pa. Oct. 23, 2018); *Mendoza v. Electrolux Home Prods., Inc.*, 15-cv-00371, 2018 WL 3973184, at *3-*4 (M.D. Pa. Aug. 20, 2018); *Allstate Ins. Co. v. Electrolux Home Prods.*, 18-cv-00699, 2018 WL 3707377, at *4–5 (E.D. Pa. Aug. 3, 2018); *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, 16-cv-665, 2017 WL 3129147 (E.D. Pa. July 24, 2017); *Hegna v. Smitty's Supply, Inc.*, 16-cv-3613, 2017 WL 2563231 (E.D. Pa. June 13, 2017); *Bors v. Johnson & Johnson*, 208 F. Supp. 3d 648, 655 (E.D. Pa. 2016). *But see In re Asbestos Prod. Liab. Litig. (No. VI)*, 384 F. Supp. 3d 532 (E.D. Pa. 2019).

The Court notes that the Pennsylvania Superior Court, sitting *en banc*, recently heard oral argument on the issue of consenting to jurisdiction by business registration in *Murray v. American LaFrance*, 2018 Pa. Super. 267 (Pa. Super. Ct. Sept. 25, 2018), *reh'g granted*, 2018 Pa. Super. LEXIS 1320 (Pa. Super. Ct. Dec. 7, 2018). Prior to *Murray*, the Superior Court had held that foreign businesses registered to do business in Pennsylvania consent to general jurisdiction by Pennsylvania courts. *See Webb-Benjamin LLC v. Int'l Rug Grp., LLC*, 192 A.3d 1133 (Pa. Super. Ct. 2018).

11

proper venue." *Yang v. Odom,* 409 F. Supp.2d 599, 604 (D.N.J. 2006) (citing *Shutte,* 431 F.2d at 24). The parties do not dispute that the District of Massachusetts would have the necessary jurisdiction over this case and would be a proper venue for adjudication.

The Court next addresses the private and public interest factors identified by the Third Circuit to decide whether, "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879. The private interest factors include (1) plaintiff's forum preference as manifested in the original choice; (2) defendants' preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records. *Id.* at 879. The public interest factors include (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879–80.

As discussed, this case involves a valid and enforceable forum selection clause which generally requires that the Court not weigh plaintiff's choice of forum or the parties' private interest in convenience. *Atl. Marine*, 571 U.S. at 64. Because not all parties in this case are bound by the RCA forum selection clause, the Court applies the modified four-step framework established by the Third Circuit in *In re: Howmedica Osteonics Corp.* 867 F.3d at 403–04. First, the Court applies the *Atlantic Marine* framework to the parties bound by the forum selection clause, HCSG and Moreta, and evaluates whether the public interest factors so heavily weigh in favor of transfer that the forum selection clause should not be enforced. *Id.* at 407; *Atl.*

12

*Marine*, 571 U.S. at 64. Second, the Court conducts an "independent § 1404(a) analysis of private and public interests relevant" to the non-contracting party, Serene. *In re: Howmedica Osteonics Corp.*, 867 F.3d at 408. "If, at this juncture, the Step One and Step Two analyses point to the same forum, then the court should allow the case to proceed in that forum, whether by transfer or by retaining jurisdiction over the entire case, and the transfer inquiry ends there." *Id.* at 405; *see also Roller v. Red Payments L.L.C.*, No. CV 18-1834, 2019 WL 3802031, at *11 (E.D. Pa., Aug. 12, 2019). In this case, Steps One and Two both "point" to the Eastern District of Pennsylvania, so the Court need not evaluate Steps Three and Four.

*1. Step One: The Forum Selection Clause*

At Step One, the Court applies *Atlantic Marine* to the parties bound by the forum selection clause, HCSG and Moreta, and determines whether the public interest factors "overwhelmingly" favor transfer to overcome the forum selection clause. *Atl. Marine*, 571 U.S. at 67. Of the six *Jumara* public interest factors, one factor favors transfer, one factor weighs against transfer, and the remaining factors are neutral. These interests are insufficient to justify transfer of HCSG's claims against Moreta.

Only the fourth factor, the local interest in deciding local controversies at home, favors transfer. Both forum states, Pennsylvania and Massachusetts, have an interest in deciding a controversy involving their respective residents, HCSG and Moreta. *See Argro v. Marriott Int'l*, No. 13-5507, 2014 WL 2572804, at *3 (E.D. Pa. June 6, 2014). However, because most of the alleged conduct—HCSG's hiring of Moreta, Moreta's resignation from HCSG, and Serene's hiring of Moreta—occurred in Massachusetts, the interest of Massachusetts slightly outweighs that of Pennsylvania. *See SMA Medical Laboratories*, No. CV 17-3777, 2018 WL 3388325, at *5 (E.D. Pa. July 12, 2018).

The final public interest factor, the familiarity of the trial judge with the state law applicable in the case, weighs slightly against transfer. Although this factor carries less weight with cases involving simpler and well-established areas of law such as breach of contract, judges in the Eastern District of Pennsylvania are generally more familiar with Pennsylvania state law, the law governing the RCA in this case, than are federal judges in Massachusetts. *See* 15 Alan Wright et al., *Fed. Prac. & Proc. Juris.* § 3854 (4th ed. 2018); *Healthcare Servs. Grp., Inc v. Skyline Servs. Grp.*, 2018 WL 637773, at *7.

The remaining four public interest factors are neutral. The first factor, enforceability of the judgment, favors neither forum because a judgment rendered by the Eastern District of Pennsylvania or District of Massachusetts is equally enforceable in the other district. *Atanassov v. Amspec Servs.*, No. CV153628FLWLHG, 2016 WL 740269, at *1 (D.N.J. Feb. 24, 2016) (citing 17 James Moore, et al., *Moore's Federal Practice* Civil § 111.13). With respect to the second factor, defendants contend that litigation in Massachusetts would be more efficient and less expensive because "it would be hard to imagine that most [witnesses] would not be connected to . . . Brigham Health, and . . . could be subpoenaed to attend a trial or hearing in Massachusetts only." Defs.' Reply Br. 10. However, defendants have failed to identify a single witness to support their argument. This factor is thus neutral. The third factor, related to court congestion in the two fora, is also neutral because the number of pending cases per judge in the Eastern District of Pennsylvania (359) and District of Massachusetts (373) are comparable. *See* United States Courts, *Federal Court Management Statistics, June 2019* (lasted visited Nov. 13, 2019), https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-june-2019. Finally, defendants concede that the public policies of Pennsylvania and Massachusetts

are neutral.[6]  Defs.' Mot. Dismiss 15.

In cases involving forum selection clauses, the Supreme Court has held that "[i]n all but the most unusual cases . . . 'the interest of justice' is served by holding parties to their bargain" and enforcing the forum selection provision.  *Atl. Marine*, 571 U.S. at 66.  In sum, given the significant weight attributed to a valid and enforceable forum selection clause, the public interest factors do not justify transfer of the claims against Moreta.

> 2. *Step Two: Private and Public Interests Relevant to Non-Contracting Parties*

Step Two, which requires the Court to weigh the private and public interest factors related to HCSG and Serene, also militates against transfer.  Of the six private interest factors relating to HCSG and Serene, two favor transfer, one weighs against transfer, and the remaining factors are neutral. Taken together with the public interest factors already discussed, the private interest factors do not justify transfer of the claim against Serene to the District of Massachusetts.

Only the second and third *Jumara* private interest factors—defendant's preference and whether the claim arose elsewhere—favor transfer.  Serene's preferred forum is the District of Massachusetts and the majority of operative events took place in Massachusetts, not Pennsylvania.

The first private interest factor, plaintiff's forum preference, weighs against transfer.  Courts generally give plaintiff's preferred forum choice substantial deference and grant it even

---

[6] The parties, however, dispute the significance of the Massachusetts Noncompetition Agreement Act, a recently enacted state statute that, *inter alia*, imposes restrictions on the use and enforcement of non-compete clauses in Massachusetts.  *See* Mass. Gen. Laws. ch. 149 § 24L.  Significantly, the statute was not enacted until after the contracts in this case were executed and it is therefore inapplicable to this case.  Nevertheless, and notwithstanding defendants' argument that this factor is neutral, defendants contend that the statute demonstrates that Massachusetts has "an established local interest in deciding claims premised on restricting the ability of its citizens to be gainfully employed." Defs.' Reply Br. 10 n.5.  The Court concludes that the Noncompetition Agreement Act evinces the interest of Massachusetts in limiting the scope of non-compete agreements, but it is insufficient to overcome the other *Jumara* factors that are neutral and those that weigh against transfer in this case.

15

greater deference when the plaintiff, as HCSG has done, files suit in its home district. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56, n.23 (1981); *Am. Argo Corp. v. U.S. Fid. & Guar. Co.*, 590 F. Supp. 1002, 1004 (E.D. Pa. 1984). However, this factor carries less weight when "none of the operative facts occurred in the selected forum," such as in this case. *Fid. Leasing, Inc. v. Metavec Corp.*, No. Civ.A. 98-6035, 1999 WL 269933, at *2 (E.D. Pa., Apr. 29, 1999). Noting that these considerations offset each other, this factor still favors litigating in Pennsylvania.

The remaining private interest factors are neutral: the convenience of the parties, the convenience of the witnesses, and the location of books and records. Although defendants contend that it would be inconvenient for Moreta to travel to the Eastern District of Pennsylvania for depositions and trial, they do not address the relative inconvenience such travel would cause Serene—the only defendant whose private interests may be considered by the Court. For this reason, the factor is neutral. As for the remaining two factors, a court may consider the convenience of the witnesses and the location of books and records "only to the extent that the witnesses may actually be unavailable for trial in one of the fora" and the records "could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. However, as defendants have not identified any specific witnesses or records, or provided any explanation why they may be unavailable in this district, they have not met their burden on this issue. *See Brenner v. Consol. Rail Corp.*, No. 09-cv-1574, 2009 WL 2710241, at *3 (E.D. Pa. Aug. 26, 2009) ("It is Defendants who have the burden of identifying witnesses who would be unavailable at trial."). Moreover, given technological advances, courts attribute less weight to the location of books and records in the § 1404(a) analysis. *See, e.g.*, *Edwards v. Equifax Info. Servs., LLC*, 313 F. Supp. 3d 618, 623–24 (E.D. Pa. 2018). The Court thus concludes that these factors are neutral and lend

no weight in favor of transfer.

In sum, the public interest factors and private interest factors relating to Serene are mixed. However, because the factors do not substantially favor transfer, Step Two of the *Howmedica Osteonics* framework counsels that this case remain in the Eastern District of Pennsylvania. Accordingly, because both Step One and Step Two counsel against transfer, the Court concludes its analysis and denies defendants' motion to transfer.

## V.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. [sic] 12(b)(2) or, in the Alternative, Motion to Transfer Venue, is denied. An appropriate order follows.